**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| INTERNATIONAL PAINTER AND ALLIED | * | |
| TRADES INDUSTRY PENSION FUND, AND | * | |
| DANIEL R. WILLIAMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. 25-cv-2172-JRR |
| v. | * | |
| | * | |
| RAINBOW PAINTING AND DECORATING, | * | |
| INC., | * | |
| | * | |
| Defendant. | | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2), ECF No. 19, filed by Plaintiffs International Painters and Allied Trades Industry Pension Fund ("the Fund") and Daniel R. Williams ("Williams") (collectively, "Plaintiffs"). On May 5, 2026, in accordance with 28 U.S.C. § 636 and Local Rules 301 & 302, Judge Rubin referred this motion to the undersigned to review and to make recommendations concerning damages. ECF No. 23. The undersigned has reviewed Plaintiff's Motion and the accompanying attachments. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated herein, the undersigned recommends that default judgment be entered in favor of Plaintiffs in the following amounts: $538,298.00 in withdrawal liability; $20,115.59 in interest through April 27, 2026; additional interest of $58.99 per day between April 28, 2026, and the date judgment is entered; $107,659.60 in liquidated damages; $5,921.00 in attorney's fees; and $691.00 in litigation costs.

## I.    BACKGROUND

Plaintiffs filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") for the collection of interim withdrawal liability payments and additional statutory damages. ECF No. 12; *see generally,* 29 U.S.C. §§ 1001-1461. The Fund is a multiemployer pension plan administered in Hanover, Maryland. Defendant Rainbow Painting and Decorating, Inc. ("Rainbow Painting") is a Missouri corporation that was bound by a collective bargaining agreement requiring contributions to the Fund on behalf of covered employees. *Id.* at 2.[1] The Fund

---

[1] As discussed more fully *infra*, "when considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to

determined that Rainbow Painting completely withdrew from the Fund during the 2023 plan year within the meaning of the ERISA. *Id.* at 3.

On March 21, 2025, the Fund issued a Notice and Demand assessing withdrawal liability against Rainbow Painting in the amount of $538,298. *Id.* at 3. The Fund advised Rainbow Painting that it could satisfy the liability either through a lump-sum payment or through ninety-three monthly payments of $7,139 followed by a final payment of $6,888. *Id.* The first payment was due no later than May 21, 2025. *Id.*

On March 27, 2025, Rainbow Painting submitted a request for review of the assessment. *Id.* In that submission, Rainbow Painting asserted that approximately ninety-six percent of its work consisted of new construction projects. ECF No. 12 at 9. On July 2, 2025, the Fund responded to the request, denied the challenge, and maintained that Rainbow Painting had incurred withdrawal liability as a result of a complete withdrawal in 2023. *Id.* at 10. Plaintiffs allege that Rainbow Painting did not make the first interim withdrawal liability payment due on May 21, 2025. *Id.* at 3. Under ERISA's "pay now, dispute later" framework, an employer must make interim withdrawal liability payments notwithstanding a pending challenge to the assessment. 29 U.S.C. § 1399(c)(2); *see generally* 29 U.S.C. § 1399-1401.

On May 23, 2025, the Fund issued a sixty-day cure notice advising Rainbow Painting that it had failed to make the required payment and directing it to cure the delinquency. *Id.* at 3. The notice warned that failure to cure could result in litigation seeking the unpaid withdrawal liability, interest, liquidated damages, attorneys' fees, and costs. *Id.*

Plaintiffs served their original complaint on Rainbow Painting on July 10, 2025. ECF No. 4. After Rainbow Painting failed to respond, the Clerk entered default on August 27, 2025. ECF No. 5. Plaintiffs subsequently sought leave to amend their complaint, which the Court granted on December 17, 2025. ECF No. 11 & 12. The Court denied Plaintiffs' first motion for default judgment as moot and directed the Clerk to docket the First Amended Complaint. Following service of the First Amended Complaint on February 21, 2026, Rainbow Painting again failed to plead or otherwise defend. The Clerk entered default on March 30, 2026. ECF No. 17. Plaintiffs thereafter filed the pending Motion for Default Judgment on April 29, 2026, which was referred to the undersigned for a report and recommendation on May 5, 2026. ECF No. 21 & 22.

## II.    LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment." *ME2 Prods., Inc. v. Ahmed*, 289 F. Supp. 3d

---

damages." *Basba v. Liu Xuegie*, No. 8:19-cv-380-PX, 2021 WL 242495, at *2 (D. Md. Jan. 25, 2021).

760, 762 (W.D. Va. 2018) (other citation omitted). First, "the [C]lerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, a party may move the Court for default judgment under Rule 55(b). Thereafter, "the court may enter default judgment at the plaintiff's request and with notice to the defaulting party." *Basba v. Liu Xuegie*, No. 8:19-cv-380-PX, 2021 WL 242495, at *2 (D. Md. Jan. 25, 2021) (citing Fed. R. Civ. P. 55(b)(2)). "Entry of default judgment is left to the discretion of the court." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (other citation omitted). Although the Fourth Circuit has a strong policy that cases be decided on their merits, "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *Id.* (other citations omitted).

"A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded." *Basba*, 2021 WL 242495, at *2. Rather, "when considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to damages." *Id.* at *3 (citing Fed. R. Civ. P. 8(b)(6); *Ryan Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citation and internal quotation marks omitted)). "District courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Basba*, 2021 WL 242495, at *3 (citing *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *2–3 (D. Md. Apr. 9, 2012); *U.S. v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832, at *2–3 (D. Md. Oct. 27, 2011)). "Where a complaint offers only labels and conclusions[,] or naked assertion[s] devoid of further factual enhancement, the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Basba*, 2021 WL 242495, at *3 (other citation and internal quotation marks omitted).

If liability is established, the Court proceeds to assess damages. However, the Court cannot solely rely on a complaint to assess damages. *See Trs. Of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). A Court may only award damages without a hearing if the record supports the damages Plaintiff requests. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09-cv-00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages . . ." after default judgment was entered because the plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages plaintiff sought).

3

## III.    DISCUSSION

### A.  Jurisdiction and Venue

As a preliminary matter, the undersigned finds that jurisdiction and venue are proper. After an entry of default under Rule 55(a), a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). Entry of default does not alone entitle a plaintiff to judgment as of right. The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). This independent obligation to confirm the existence of subject matter jurisdiction is especially important when considering a motion for default judgment.

Here, Plaintiffs allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the ERISA and the MPPAA. Specifically, Plaintiffs seek to recover interim withdrawal liability payments and related statutory damages under 29 U.S.C. §§ 1132, 1401, and 1451. Federal district courts have original jurisdiction over civil actions arising under the laws of the United States. 28 U.S.C. § 1331. In addition, ERISA expressly grants federal district courts jurisdiction over actions brought by fiduciaries and multiemployer plans to enforce withdrawal liability obligations. *See* 29 U.S.C. §§ 1132(e), 1401(b)(1), 1451(c). Plaintiffs allege that the Fund is a multiemployer pension plan and that Williams is a fiduciary of the Fund bringing claims under ERISA and the MPPAA against Rainbow Painting. Accordingly, Plaintiffs have sufficiently alleged a basis for federal question jurisdiction. *See* ECF No. 12.

Regarding personal jurisdiction over Defendant, ERISA Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). *Bd. of Trs., Nat. Stabilization Agreement of Sheet Metal Indus. Tr. Fund v. J&R Installations, Inc.*, No. CIV.A. 1:09CV1304, 2010 WL 2039659, at *5 (E.D. Va. Apr. 20, 2010), *report and recommendation adopted*, No. 1:09CV1304(LMB/JFA), 2010 WL 2039491 (E.D. Va. May 20, 2010). This Court also has personal jurisdiction over Defendant because ERISA authorizes nationwide service of process, and Defendant is an employer subject to ERISA's withdrawal liability provisions. See 29 U.S.C. §§ 1132(e)(2), 1451(d); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045–46 (E.D. Va. 1997) (holding that, in ERISA actions, personal jurisdiction is determined based on a defendant's contacts with the United States as a whole because ERISA provides for nationwide service of process). The summons and First Amended Complaint were served on Rainbow Painting on February 21, 2026. ECF No. 15. Defendant's response was due on or before March 16, 2026, but Defendant failed to plead or otherwise defend. *Id.*

Finally, venue is proper in this Court pursuant to 29 U.S.C. §§ 1132(e)(2) and 1451(d) because the Pension Fund is administered in Hanover, Maryland. (ECF No. 12 ¶¶ 3–4).

4

### B. Liability

ERISA was enacted to promote and protect "'the interests of employees and their beneficiaries' by establishing 'minimum standards . . . assuring the equitable character of [employee benefit] plans and their financial soundness.'" *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 440 (4th Cir. 2015) (quoting 29 U.S.C. § 1001(a)). "Multiemployer pension plans, structured in accordance with ERISA, provide for the pooling of contributions and liabilities." *Penske Logistics LLC v. Freight Drivers & Helpers Loc. Union No. 557 Pension Fund*, 820 F. App'x 179, 181 (4th Cir. 2020).

To "shore up the financial stability of multiemployer pension plans," *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006), "Congress in 1980 passed the [MPPAA]," which "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan[,]" *Plumbing Servs.*, 791 F.3d at 440 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984)). "An employer owes withdrawal liability when it makes a complete or partial withdrawal from a pension plan." *Id.* (citing 29 U.S.C. § 1381(a)). "An employer's complete withdrawal occurs when an employer permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan[.]" *Penske Logistics*, 820 F. App'x at 182 (citing 29 U.S.C. § 1383(a)). "ERISA treats all trades or businesses that are under common control as a single employer[,]" *Plumbing Servs.*, 791 F.3d at 440 (citing 29 U.S.C. § 1301(b)(1)), "and each member of the controlled group is liable for the withdrawal of any other member[,]" *Penske Logistics*, 820 F. App'x at 182 (citation omitted). When an employer withdraws from a multiemployer plan, the "plan sponsor"—the designated administrator of the plan—is required to (1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability and schedule of liability payments, and (3) demand and collect the amount of the withdrawal liability from the employer in accordance with the schedule. 29 U.S.C. §§ 1382 & 1399(b)(1).

A "default" occurs when the employer fails to make withdrawal liability payments when due and "the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure[.]" 29 U.S.C. § 1399(c)(5)(A). "In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.*

An employer who disputes the plan sponsor's assessment of withdrawal liability may submit an objection to the plan sponsor or request that the plan sponsor review any specific matter relating to its determination of the employer's liability and schedule of payments. 29 U.S.C. § 1399(b)(2)(A); *see also Plumbing Servs.*, 791 F.3d at 441. "An employer dissatisfied with the plan sponsor's response must demand arbitration within a 60-day period after the earlier of the date of the plan sponsor's notification that it has rejected the employer's request for review, or 120

days after the employer's request for review." *Id.* (citing 29 U.S.C. § 1401(a)(1)). "If . . . the employer does not pursue arbitration, the amount assessed by the plan sponsor as withdrawal liability 'shall be due and owing on the schedule set forth by the plan sponsor,' which may then 'bring an action in a State or Federal court of competent jurisdiction for collection.'" *Id.* (quoting 29 U.S.C. § 1401(b)(1)). "In such a circumstance, an employer is deemed to have waived review of all issues concerning the determination of withdrawal liability." *Id.* (citing *BES Servs.*, 469 F.3d at 375).

### C.  Amounts of Withdrawal Liability, Interest, and Liquidated Damages

The allegations in the First Amended Complaint, together with the exhibits to Plaintiff's motion, support the relief sought in this action. Rainbow Painting was obligated under a collective bargaining agreement to make contributions to the Fund, a multiemployer pension plan. ECF No. 12 at 8-9. The Fund subsequently determined that Rainbow Painting completely withdrew from the Fund during the 2023 plan year within the meaning of 29 U.S.C. § 1383. *Id.* at 10. Pursuant to 29 U.S.C. §§ 1382 and 1399(b)(1), the Fund assessed withdrawal liability in the amount of $538,298 and, by letter dated March 21, 2025, notified Rainbow Painting of the assessment and demanded payment in accordance with a schedule requiring ninety-three monthly payments of $7,139 followed by a final payment of $6,888. *Id.* at 11-12. Rainbow Painting thereafter submitted a request for review of the assessment pursuant to 29 U.S.C. § 1399(b)(2)(A), which the Fund denied by letter dated July 2, 2025. *Id.* at 13-14. However, despite disputing the assessment, Rainbow Painting failed to make the first payment due on May 21, 2025, as required by ERISA's "pay now, dispute later" provisions. *Id.* at 15.

The Fund subsequently issued a sixty-day cure notice pursuant to 29 U.S.C. § 1399(c)(5), advising Rainbow Painting of its delinquency and providing an opportunity to cure. *Id.* at 16-17. Rainbow Painting failed to cure the missed payments within the prescribed period. *Id.* at 18. According to the First Amended Complaint, Rainbow Painting had missed two scheduled payments, resulting in a principal deficiency of $14,278.00, together with interest and other statutory damages authorized by ERISA. *Id.* at 19–21. Because Rainbow Painting contested the assessment and the period to initiate arbitration had not expired, Plaintiffs limited this action to the collection of interim withdrawal liability payments and related statutory damages pursuant to 29 U.S.C. §§ 1399(c)(2), 1401(d), and 1451(b). *Id.* at 22.

The calculation of Defendant's withdrawal liability is detailed in the Fund's Withdrawal Liability Notice and Demand Letter dated March 21, 2025, and the actuarial worksheets attached thereto. The Demand Letter reflects a withdrawal liability assessment of $538,298.00 based upon the Fund's calculation of Rainbow Painting's share of the Fund's unfunded vested benefits pursuant to the MPPAA. ECF No. 19-3 at 3.

The calculation of interest owed on the withdrawal liability is detailed in the Declaration of Michael O'Malley ("O'Malley Declaration"), ECF No. 19-6 at 2-3. Pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to interest on the unpaid withdrawal liability from the date of

6

Defendant's first missed payment. Defendant failed to make its first scheduled payment due on May 21, 2025, and interest has accrued on the accelerated withdrawal liability amount since that date. ECF No.19-2 at 4. The amount of accrued interest through April 27, 2026 is $20,115.59, with additional interest accruing afterwards at the rate of $58.99 per day (i.e. 4% of $538,298.00, divided by 365) until a judgment is entered. ECF No. 19-6 at 2-3.

Pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are also entitled to an award equal to the greater of the interest owed on the withdrawal liability or liquidated damages provided for under the Plan, not in excess of twenty percent of the unpaid withdrawal liability. Here, the Fund's Trust Agreement provides for liquidated damages in the amount of twenty percent of the unpaid contributions, ECF No. 19-5 at 6, hence $107,659.60 (i.e. 20% of $538,298.00), which is greater than the interest owed. Accordingly, the undersigned recommends that the default judgment entered in this case include awards of $538,298.00 in withdrawal liability, $20,115.59 in accrued interest through April 27. 2026, additional interest of $58.99 per day between April 28, 2026 and the date judgment is entered, and $107,659.60 in liquidated damages.

### D. Attorney's Fees and Costs

Plaintiffs also seek an award of attorney's fees and litigation costs. Under ERISA, in an action "to compel an employer to pay withdrawal liability," 29 U.S.C. § 1451(b), where "a judgment in favor of the plan is awarded," the court must award "reasonable attorney's fees and costs of the action, to be paid by the defendant[.]" 29 U.S.C. § 1132(g)(2)(D).

Courts in this District determine reasonable attorney's fees under § 1132(g) using the lodestar method. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting*, 919 F. Supp. 2d 680, 688 (D. Md. 2013); *Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Life Safety Engineered Sys., Inc.*, Civ. No. TDC-18-248, 2018 WL 4784615, at *6–7 (D. Md. Oct. 4, 2018), *report and recommendation adopted* (Oct. 22, 2018); *Nat'l Elec. Benefit Fund v. Wire to Water Elec. of New York, Inc.*, Civ. No. TDC-19-3003, 2020 WL 1933625, at *5–8 (D. Md. Apr. 21, 2020), *report and recommendation adopted* (May 8, 2020). The lodestar amount is calculated by multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation[.]" *Cap. Restoration & Painting*, 919 F. Supp. 2d at 688 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In determining whether the requested hours and rates are reasonable, courts consider the twelve factors adopted by the Fourth Circuit from the Fifth Circuit's decision in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results

7

obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Courts in this District also consult Appendix B to the Local Rules, entitled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" (the "Local Guidelines"), which sets forth ranges of hourly rates based on an attorney's years of experience that are considered "presumptively reasonable for lodestar calculations" in this District. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014).

Here, under the first factor, the time and labor expended were reasonable. Counsel billed a total of 26.3 hours litigating this action, including drafting the Complaint, preparing the Motion for Default Judgment, and supporting memoranda. Lead counsel avers that he reviewed the billing records to ensure that the time charged was accurate, reasonable, and necessary to prosecute the action. *See* Declaration of Neil J. Gregorio ("Gregorio Decl."), ECF No. 19-7 at ¶¶ 15-16, 18-19. The undersigned concludes that the hours expended were commensurate with the work required to obtain default judgment.

Second, although this case does not present particularly novel legal questions, ERISA withdrawal liability actions involve specialized statutory schemes requiring familiarity with federal pension law and collection procedures. Third, the skill required to perform the legal services rendered supports the requested award. Counsel specialize in ERISA litigation and regularly represent multiemployer benefit plans in withdrawal liability actions nationwide. Lead counsel has practiced in this area for more than two decades and lectures nationally on ERISA and withdrawal liability issues. *See* Gregorio Decl. at ¶¶ 4-8. Fourth, there is no indication that counsel incurred unusual opportunity costs in pursuing this litigation. This factor is neutral. Fifth, the customary fee for similar work favors the requested award. Counsel attests that the requested rates are consistent with prevailing rates in comparable legal markets and with Appendix B to the Local Rules of this District. *See* Gregorio Decl. at ¶ 13. Sixth, there is no evidence concerning counsel's expectations at the outset of the litigation. This factor is neutral. Seventh, no unusual time limitations imposed by the client or circumstances are apparent from the record. Accordingly, this factor is neutral.

Eighth, the amount in controversy and results obtained strongly favor the requested award. Plaintiffs successfully obtained entry of default, and if the Court adopts this Report and Recommendation, will recover the relief authorized by ERISA. Ninth, the experience, reputation, and ability of counsel support the requested award. Lead counsel has practiced ERISA law since 2003, heads his law firm's ERISA practice group, and regularly handles withdrawal liability litigation across the country. Other attorneys and paralegals assigned to this matter likewise possess substantial experience in ERISA litigation. *See* Gregorio Decl. at ¶¶ 3-11. Tenth, there is

no indication that this case was undesirable within the legal community. This factor is neutral. Eleventh, the record does not address the nature and length of counsel's relationship with Plaintiffs, although counsel represents numerous multiemployer benefit funds, including Plaintiff Fund. *See* Gregorio Decl. at ¶¶ 5-6. This factor is at most neutral.

Twelfth, fee awards in similar ERISA collection actions routinely approve comparable rates and hours, particularly where, as here, the requested rates largely fall within the presumptively reasonable ranges established by Appendix B to the Local Rules. The undersigned further notes that although the paralegal rate slightly exceeds the Local Guidelines, counsel has explained that the rate reflects more than twenty years of ERISA experience and results in overall efficiencies that reduce total litigation costs. *See* Gregorio Decl. at ¶ 14.

Having considered the factors adopted by the Fourth Circuit, the undersigned concludes that both the hourly rates and the number of hours expended are reasonable. Therefore, the undersigned recommends that the Court awards Plaintiffs' attorney's fees in the amount of $5,921.00 and costs in the amount of $691.00.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends:

1.  That Plaintiff's Motion for Default Judgment be granted;

2.  That default judgment be entered in favor of Plaintiff and against Defendant in the total amount of $672,685.19, consisting of $538,298.00 in withdrawal liability, $20,115.59 in accrued interest, $107,659.60 in liquidated damages, $5,921.00 in attorneys' fees, and $691.00 in costs, as well as additional interest accruing at the rate of $58.99 per day from April 28, 2026, until judgment is entered.

The Clerk of Court shall mail a copy of this Report and Recommendation to Defendant Rainbow Painting & Decorating, Inc.

Objections to this Report and Recommendation must be served and filed within 14 days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

Date: July 7, 2026

                                                        /s/
                                            Douglas R. Miller
                                            United States Magistrate Judge

9